

**ORDERED in the Southern District of Florida on September 11, 2012.**

_A. Jay Cristol, Judge_
_United States Bankruptcy Court_

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:

MAURY ROSENBERG,                                    CASE NO:  09-13196-BKC-AJC
                                                    Involuntary Chapter 7 Case

     Alleged Debtor.
_____/

MAURY ROSENBERG,                                    ADV. NO. 10-3812-BKC-AJC-A

     Plaintiff,
vs.

DVI RECEIVABLES, XIV, LLC, et al.,

     Defendants.
_____/

## ORDER DETERMINING REASONABLE AMOUNTS OF ATTORNEYS' FEES AND COSTS RECOVERABLE AGAINST PETITIONING CREDITORS, PURSUANT TO 11 U.S.C. § 303(i)(1)

     **THIS MATTER** came before the Court for trial on August 28, 2012.  Upon consideration of the evidence and the argument of counsel, the Court enters the following opinion and order.

1

**Introduction, Background and Procedural History**

The factual background of this matter is recited in the Court's August 21, 2009 Order Dismissing Involuntary Bankruptcy Petition [D.E. #96][1] (the "Dismissal Order").  In the Dismissal Order, the Court reserved jurisdiction to consider awarding reasonable attorneys' fees and costs, as well as actual and punitive damages, to the Alleged Debtor, Maury Rosenberg, the Plaintiff herein, pursuant to 11 U.S.C. § 303(i)(1) and (2).  Prior to the entry of the Dismissal Order, the Court, on consent of the parties, entered a March 26, 2009 Order defining the scope of the issues to be determined at the hearing on Rosenberg's motion to dismiss [D.E. #34].  The Court limited the issues to those bearing on the eligibility of the Petitioning Creditors[2] under 11 U.S.C. § 303(b).  The Court did not address whether the Involuntary Petition was filed in bad faith.

After reviewing the evidence, and hearing argument of counsel, the Court determined that the Petitioning Creditors were not eligible to file the Involuntary Petition.  The Court based its decision on several grounds.  The Court's analysis and conclusions are set forth in detail in the Dismissal Order.[3]

The Petitioning Creditors sought reconsideration of the Dismissal Order and also sought an amendment to remove one sentence that expressed the Court's preliminary view that the

---

[1] References to documents in the dismissed involuntary bankruptcy case (Case No. 09-13196) are cited as D.E. #___.  References to documents in the adversary proceeding (Adv. Case No. 10-03812) are cited as D.E. Adv. #___.

[2] The Petitioning Creditors are DVI Receivables XIV, LLC, DVI Receivables XVI, LLC, DVI Receivables, XVII, LLC, DVI Receivables XVIII, LLC, DVI Receivables XIX, LLC and DVI Funding, LLC.  They are referred to herein as the "Petitioning Creditors."

[3] As set forth more fully in the Dismissal Order, this Court concluded that Rosenberg's guaranty runs to Lyon Financial Services, Inc. ("Lyon") or U.S. Bank, N.A. ("USB"), not to the Petitioning Creditors and that the Petitioning Creditors are not real parties in interest because they lack any economic stake in the debts they alleged were due to them.  The Court also ruled that the Petitioning Creditors are judicially estopped to assert creditor status because, in an earlier Pennsylvania state court case, Lyon, not the Petitioning Creditors, sued Rosenberg to collect on the same debts. Finally, the Court concluded that the debts are contingent, because a demand for payment was not made on Rosenberg, and that a bona fide dispute exists concerning a portion of the debt.

Petitioning Creditors may have artificially attempted to create three or more creditors. The Petitioning Creditors noted that the good faith issue was not within the scope of the hearing. *See* D.E. #103. The Court denied reconsideration but granted the motion to amend to remove the language about which the Petitioning Creditors expressed concern. *See* D.E. # 129.

After the denial of reconsideration, the Petitioning Creditors pursued an appeal to the United States District Court for the Southern District of Florida. The District Court affirmed this Court's decision with the exception of the Court's ruling that the debts are contingent. However, the District Court's view on this issue did not change the result. Thereafter, the Petitioning Creditors filed a further appeal in the United States Court of Appeals for the Eleventh Circuit. The Eleventh Circuit affirmed the District Court's decision in all respects.

Rosenberg filed a Motion for Sanctions in the main bankruptcy case on October 29, 2009 [D.E. #101]. Rosenberg sought an award of fees, costs and damages against the Petitioning Creditors and Ashland Funding, LLC, which had moved to be substituted for one of the Petitioning Creditors. He also sought an award against the following additional parties he contended were responsible for the Involuntary Petition: Lyon Financial Services, Inc. d/b/a U.S. Bank Portfolio Services ("Lyon"), the successor servicer for the Petitioning Creditors, U.S. Bank, N.A. ("USB"), the ultimate parent entity of Lyon, Jane Fox ("Fox"), the officer of Lyon who signed the Involuntary Petition on behalf of the Petitioning Creditors, Flamm Walton, P.C. ("Flamm"), the law firm that represented Lyon and that filed the Involuntary Petition, Robert Pinel ("Pinel"), the attorney at the Flamm firm who signed the Involuntary Petition, BG Management, Inc. ("BG"), a consulting firm that had been retained by Lyon, and, finally, Robert Brier ("Brier"), one of the principals of the consulting firm.

The Court determined that it did not have jurisdiction over the additional parties because they had not appeared as parties and had not been served with process. *See* D.E. #126. Rosenberg then filed the current Adversary Complaint [D.E. Adv. #1] and served process on the additional parties.

The Petitioning Creditors, Lyon, USB and Fox filed a Motion to Dismiss Adversary Complaint [D.E. Adv. #18]. Defendants Ashland, Brier and BG filed their own motion to dismiss [D.E. Adv. #17], and Defendants Flamm and Pinel also filed their own motion to dismiss [D.E. Adv. #21]. All of the Defendants, other than the Petitioning Creditors, contended that, pursuant to Section 303(i), only the Petitioning Creditors were subject to potential liability for fees, costs and damages. The Defendants also raised various additional legal issues. The Court, after conducting an extensive hearing, entered separate orders on the motions to dismiss. *See* D.E. Adv. ## 165, 166 & 168.

For the reasons fully set forth in the Court's orders, the Court dismissed Rosenberg's state law claims (abuse of process and malicious prosecution) against all Defendants based on federal preemption, and the Court dismissed all federal and state law claims against Ashland, Brier, BG, Flamm and Pinel. The Court did not dismiss the claims against the Petitioning Creditors, Lyon, USB and Fox, except the state law claims. *See* D.E. # Adv. 165.

In deciding not to dismiss the claims against Lyon, USB and Fox, the Court found that Rosenberg had alleged sufficient facts to hold Lyon, USB and Fox liable for fees, costs and damages pursuant to Section 303(i)(1) and (2). The Court did not make final legal rulings on these issues. Thereafter, the Petitioning Creditors and Lyon, USB and Fox filed an Answer and Affirmative Defenses [D.E. Adv. #210] denying many of the allegations of the Amended Complaint and raising several affirmative defenses including setoff. Discovery ensued, and the

4

Court denied motions for partial summary judgment filed by both sides, finding the existence of issues of fact.  On March 12, 2012, Rosenberg filed a Demand for Jury Trial [D.E. Adv. #152]. On May 21, 2012, the Petitioning Creditors, Lyon, USB and Fox filed a Motion to Withdraw Reference [D.E. Adv. #247].  On August 10, 2012, the District Court entered its Corrected Order Granting Defendants' Motion to Withdraw Reference for Jury Trial as to Plaintiff's Section 303(i)(2) Claims Only (the "Withdrawal Order").  In the Withdrawal Order, the District Court set forth its view that only Plaintiff's damages claims are subject to jury trial in an Article III court.

In the Withdrawal Order, the District Court noted that Section 303(i) is divided into two parts.  Section 303(i)(1) provides for the availability of attorneys' fees and costs if the court dismissed the involuntary petition other than on the consent of all parties, as occurred here. Section 303(i)(1) grants the court discretion to award fees and costs.  It does not require a finding of bad faith.  Section 303(i)(2), on the other hand, requires a finding of bad faith for the court to award damages.  The District Court concluded that, because of the bad faith requirement, a claim under Section 303(i)(2) is analogous to a common law malicious prosecution claim and, therefore, is triable by jury.  The District Court authorized this Court to try Rosenberg's claims for attorneys' fees and costs pursuant to Section 303(i)(1).

After the entry of the Withdrawal Order, this Court set an additional pre-trial conference to decide what issues would be tried by this Court.  At the pre-trial conference, held telephonically on August 15, 2012, the Court advised the parties that it would try the following issues:  (1) whether to award attorneys' fees and the amount to be awarded, (2) whether to award costs and the amount to be awarded, and (3) who may be held liable for attorneys' fees and costs. The Court advised the parties that it would not be trying the bad faith issue, and would not

receive evidence on this issue, as this issue is reserved for jury trial.  Based on this limited scope, the trial proceeded on August 28, 2012.

Upon consideration of the arguments of counsel made at the trial, the applicable law and the evidence submitted by the parties, the Court makes the following findings of fact and conclusions of law.

## Findings of Fact

At the start of the trial, counsel for the Defendants advised the Court that the Defendants would not present evidence based on the "totality of the circumstances" as to why the Court should deny fees and costs.  Defendants advised the Court that they object to the allowance of certain categories of fees and to the reasonableness of fees in certain other categories. Defendants also requested that the Court defer ruling on the fees incurred in the instant Adversary Proceeding because this case is still pending and Rosenberg has not "prevailed". Defendants further advised the Court that they are not challenging the reasonableness of the out-of-pocket expenses sought by Plaintiff in connection with the work that was done to obtain the dismissal of the Involuntary Petition.

Defendants stipulated to the accuracy, authenticity and admissibility of the invoices, billing narratives and time records (the "Billing Records") introduced into evidence by the Plaintiff.  The Court therefore finds that Plaintiff's counsel performed the services reflected in the Billing Records and devoted the hours reflected in the Billing Records to the performance of those services.  Further, Defendants stipulated that the billing rates charged by the attorneys and legal assistants who performed the services reflected in the Billing Records are customary and appropriate billing rates for the kind of work performed and are consistent with rates charged by

bankruptcy professionals of similar experience, skill and qualifications in the South Florida market.

Other facts are established by the Involuntary Petition itself, as well as the Second Amended Involuntary Petition, and Fox's deposition testimony concerning her role and capacity as a signer. Fox signed the Original Petition and the Second Amended Involuntary Petition on behalf of the Petitioning Creditors. Fox is not an officer, director or employee of the Petitioning Creditors. Fox, who is Director of Operations for Lyon Financial Services, Inc. d/b/a US Bank Portfolio Services, testified that she acted as a representative of Lyon, the successor servicer for the Petitioning Creditors. The operative documents establish that Lyon was the servicing agent for the Petitioning Creditor entities. From the evidence presented, it is apparent that the Petitioning Creditors had no knowledge of the Involuntary Petitions separate from Fox's knowledge. There was no meeting of the directors or officers of the Petitioning Creditors to authorize Fox to sign the Original Petition. Indeed, no one at Lyon, including Fox, had spoken to, emailed or corresponded with any one of the Petitioning Creditors prior to the filing of the Original Petition.

Fox's signature on the Original Involuntary Petition appears above the name of each of the Petitioning Creditors. The signature block provides Fox's address as c/o U.S. Bank Portfolio Services as Servicer. The Second Amended Petition was also signed by Fox and indicates Fox signed on behalf of Lyon Financial Services Inc. d/b/a U.S. Bank Portfolio Services. Rosenberg argues that only Lyon had authority to sign the Original Petition and that neither the Original Petition nor the Second Amended Petition is signed by Lyon as servicer for the Petitioning Creditors or as agent for the Trustee. While the signature blocks could have been drafted more clearly, it is apparent Fox disclosed her association with U.S. Bank Portfolio Services and

subsequently with Lyon Financial Services.  Fox is the same individual who signed the 2005 settlement documents on behalf of Lyon, as successor servicer and as agent for USB, as Trustee. Fox also signed the petitions in the spaces provided for individuals signing in a representative capacity.

Defendants have not proven that Fox acted without the authority of Lyon; indeed, when Fox signed the petitions, she did so as an officer of Lyon, which was the successor servicer for the Petitioning Creditors.  The Court therefore finds that Lyon, through its agent Fox, acted as an agent for the Petitioning Creditors in filing the original and amended petitions.  Defendants assert, however, that Section 303(i) does not authorize the Court to impose liability on agents or principals of petitioning creditors.  The Court believes that, under certain circumstances, agents or principals of petitioning creditors may be held liable under Section 303(i), and concludes that such liability can be imposed in this instance.

## Conclusions Of Law

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1334(a) and (b) and has personal jurisdiction over the Defendants.  The matters before the Court concerning awarding attorneys' fees and costs pursuant to 11 U.S.C. § 303(i)(1) are "core" matters pursuant to 28 U.S.C. §157(b)(2)(A), (B), (I), and (J).  The Court has authority to enter a final judgment for attorneys' fees and costs pursuant to S.D. Fla Local R. 87.2 and the Order of Reference filed March 27, 2012 (S.D. Fla. Administrative Order 2012-25).  Further, the District Court, in its Withdrawal Order, confirmed the reference of Plaintiff's claims for attorneys' fees and costs to this Court. The Court must accordingly decide the following general issues:  (1) whether to award fees to Rosenberg and the reasonable amount of such fees; (2) whether to award costs to

Rosenberg and the reasonable amount of such costs; and (3) who is liable for the fees and costs awarded.

An award of fees and costs, pursuant to 11 U.S.C. § 303(i)(1), is "contingent in every case on three requirements: (1) the court must have dismissed the involuntary petition; (2) the dismissal must be other than a consent by all petitioners and the debtor; and (3) the debtor did not waive its right to recovery under the statute." *In re Lee*, 252 B.R. 565, 565 (Bankr. M.D. Fla. 2000). It is undisputed that these requirements have been satisfied in this case.

"Once the debtor demonstrates that the involuntary case was dismissed, the burden shifts to the petitioning creditors to present evidence to disallow an award of fees. In that sense, the award of fees is 'routine' insofar as the award should be made unless the petitioners demonstrate otherwise based upon the totality of the circumstances." *In re Ross*, 135 B.R. 230, 238 (Bankr. E.D. Pa. 1991); *In re Leach*, 102 B.R. 805, 808 (Bankr. D. Kan. 1989) ("Although the award of attorney's fees and costs is discretionary, section 303(i)(1) routinely contemplates the award of costs and attorney's fees to the debtor"); *In re Ballato*, 252 B.R. 553, 558 (Bankr. M.D. Fla. 2000) ("whether with a bad faith finding or not an involuntary debtor's motion for attorney's fees and costs under Section 303(i)(1) raises a rebuttable presumption in favor of the Debtor that fees and costs are authorized.").

The majority rule is that there is a presumption in favor of awarding costs and reasonable attorney's fees under § 303(i)(1). *In re Skyworks Ventures, Inc.*, 431 B.R. 573, 576 (Bankr. D.N.J. 2010). "[B]ecause of the potential adverse impact on the debtor and the need to encourage discretion in filing such cases, unsuccessful involuntary petitioners should routinely expect to pay the debtor's legal expenses arising from the involuntary filing." *In re Macke Intern. Trade, Inc.*, 370 B.R. 236, 249 (9th Cir. BAP 2007). The former alleged debtor does not

need to demonstrate "bad faith" to recover attorneys fees and costs.  Indeed, "bad faith" is not one of the statutory requirements for recovering fees and costs, as correctly noted by the District Court in its Withdrawal Order.  Thus, the Court makes no findings or conclusions herein relevant to the bad faith issue.

Defendants, rather than opposing an award of any fees, argue that certain categories of fees are not recoverable, or are not recoverable at this time.[4]  In addition, they assert a right of setoff.  They also argue that only the Petitioning Creditors may be held liable.  Further, Defendants have requested that the Court reduce the total allowable fees sought by 20% based upon the "unnecessary involvement" of two law firms for Plaintiff, excessive time devoted to inter-attorney conferences and client communications and the size of the fee award sought in comparison to fees awarded in similar cases.

The Court will address the several legal issues raised by Defendants first and then Defendants' arguments as to why the fee award should be reduced.  Defendants have not argued that costs should be reduced but seek to limit costs to the costs incurred in the main bankruptcy case in obtaining the dismissal of the petition.

### Legal Issues Raised By Defendants

The Defendants' arguments raise the following legal issues:  (1) whether appellate fees and costs are recoverable under Section 303(i)(1), (2) whether the Court should defer consideration of the fees incurred in the Adversary Proceeding until the conclusion of the

---

[4] As a preliminary matter, the Petitioning Creditors and US Bank Defendants argue that Rosenberg's Section 303(i) claims are untimely.  The Court disagrees.  This Court's Dismissal Order reserved jurisdiction to entertain such claims without imposing any time limitation.  Further, Rosenberg initially sought such claims in a motion in the main bankruptcy case filed on October 29, 2009, once all appeals were exhausted.  The time limitations set forth in the Federal Rules of Civil Procedure, incorporated by reference into the Federal Rules of Bankruptcy Procedure, for motions to tax fees and costs are not applicable under the circumstances herein.  *Clark v. Housing Authority of the City of Loma*, 971 F.2d 723, 724-25 (11th Cir. 1992) (attorney's fee request must be made within a reasonable time after the date of the entry of the final judgment).

Adversary Proceeding, which will occur after the completion of a jury trial, (3) whether Defendants have a right of setoff and the setoff amount, and (4) whether there is any legal basis to enter a judgment for fees and costs against parties other than the Petitioning Creditors. The Court's analysis and conclusions with respect to these legal issues are set forth below.

### Appellate Fees

The Court previously addressed this issue and finds no basis, in law or fact, to reconsider. A bankruptcy court indeed has the authority to award the fees and costs incurred by the involuntary debtor in defending an appeal from the bankruptcy court's decision to dismiss an involuntary case. An aggrieved involuntary debtor is entitled to recover the fees and costs that were necessarily incurred in defending an appeal from a decision to dismiss an improvidently filed bankruptcy petition. A denial of appellate fees would frustrate legislative intent. *See In re John Richards Homes Building Co.*, 405 B.R. 192, 198-200 (E.D. Mich. 2009); *In re Cadillac by DeLorean & DeLorean Cadillac, Inc.*, 265 B.R. 574 (Bankr. N.D. Ohio 2001).

The Defendants argue that the better reasoned cases deny an award of appellate fees. *Higgins v. Vortex Fishing Systems, Inc.*, 379 F.3d 701, 706, 708-09 (9th Cir. 2004) (citing *In re Del Mission Ltd.*, 98 F.3d 1147, 1154 (9th Cir. 1996)). *See also In re Nordbrock*, 772 F.2d 397, 400 (8th Cir. 1985); *In re Allen-Main Assoc., Ltd.*, 229 B.R. 577, 578-79 (Bankr. D. Conn. 1999); *In re Law Center*, 304 B.R. 136, 138-39 (Bankr. M.D. Pa. 2003). Defendants assert such fees and costs must be sought in the appellate court, together with the filing of an appellate brief or at another appropriate time in the appellate proceeding, and Rosenberg did not make such a request in either the first or the second appeal. Notwithstanding whether the District Court and/or the Eleventh Circuit might well have granted fees, it is nonetheless appropriate for this

11

Court to award appellate fees and to determine the reasonableness of the time charges expended in defending the appeals.

## Fees Incurred in the Adversary Proceeding

In the instant Adversary Proceeding, Rosenberg sought to recover fees and costs against the Petitioning Creditors, and against additional third parties. Rosenberg asserted claims under Section 303(i) and claims under state law. The state law claims were ultimately dismissed against all parties and the Section 303(i) claims were dismissed as to various third parties.

Contrary to the Defendants' contentions, the Court believes it is appropriate to award fees and costs for the services provided in this Adversary Proceeding to date, even though the Adversary Proceeding is not yet concluded. *See In re Southern California Sun-Belt Developers, Inc.*, 608 F.3d 456, 462-63 (9th Cir. 2010) (allowing recovery of fees incurred in litigating claim for fees). An award of fees and costs in this Adversary Proceeding is not premised upon which party "prevails". Under 11 U.S.C. §303(i)(1), Rosenberg has already "prevailed" on the merits and this Court is authorized to award fees and costs. However, the Court does not believe Rosenberg is entitled to fees for services related to the claims against dismissed third parties, or for services performed in connection with the dismissed state law claims. Such claims were not well-founded and were duplicative of the claims stated under 11 U.S.C. §303(i). Likewise, costs associated with the claims against the dismissed third parties are not allowed. Accordingly, fees will be reduced by $20,000.00, reflecting the time expended on the foregoing dismissed claims, and costs will be reduced by the amount spent on service of process on the dismissed third party defendants, and all copying costs associated with service upon said defendants.

The Court will reserve jurisdiction to award additional fees and costs for services performed hereafter in this Adversary Proceeding, once the jury trial is concluded in the United

States District Court and all appeals are exhausted, if said fees and costs are not awarded in the District Court or on appeal, if any.

## Right of Setoff

At the hearing, the Defendants advised the Court that they were prepared to present evidence in support of their setoff defense. However, the Court determined it would not, at this juncture, address the setoff issue.

In *In re Apache Trading Group, Inc.*, 229 B.R. 887 (Bankr. S.D. Fla. 1999), United States Bankruptcy Judge Larry L. Lessen, sitting by designation in the Southern District of Florida, addressed the issue concerning whether a petitioning creditor may assert a setoff against fees or damages sought by an alleged debtor who succeeded in obtaining the dismissal of an involuntary petition. Judge Lessen determined that setoff is appropriate against an award of attorneys fees, at least in cases in which bad faith is not found.

This Court has not decided whether setoff is allowable in this case. The Court will defer considering the setoff issue until after the jury trial is conducted. At that time, depending on the jury's verdict, the Court will decide whether setoff is available in this case and, if so, will conduct a further hearing to consider Defendants' setoff evidence and any opposing evidence offered by Plaintiff.

## Parties Liable for Fees and Costs

Section 303(i) imposes liability on "petitioners." Nowhere does the Bankruptcy Code define the term "petitioner" as used in Section 303(i). The term "petitioning creditor," however, has generally been used in practice to refer to those entities commencing an involuntary bankruptcy case – whether or not these entities are qualified or authorized to do so. *See* 2 Collier on Bankruptcy, ¶303.03[1] (15th ed. rev. 2007).

The plain reading and literal interpretation of Section 303(i) allows Rosenberg, as the alleged debtor who successfully dismissed the involuntary case filed against him, to seek fees and costs under Section 303(i) from those who filed the involuntary petition.  In this case, there is no dispute that the Petitioning Creditors can and should be held liable to Rosenberg to recover his attorneys' fees and costs after the entry of the Dismissal Order.

The Defendants assert that Section 303(i) liability can only be imposed on those who actually signed the petition for the involuntary bankruptcy of an alleged debtor, to the exclusion of those who acted as agent/principals for and on their behalf.  However, the Court has previously stated its preliminary view that the term "petitioner," as used in Section 303(i), may be construed to include those agents and/or principals who sign the involuntary petition on behalf of the creditors or who cause the petitioning creditors to file the petition.  The Court based its preliminary view on principles of agency law and on the doctrine of respondeat superior.  In *In re Oakley Custom Homes, Inc.*, 168 B.R. 232 (Bankr. D. Colo. 1984), the court imposed Section 303(i) liability not only against the actual petitioning creditors, but also against an agent who acted on behalf of the petitioning creditors.  The court found that the agent actively participated in the decision to file the involuntary petition. *Id*. at 232-34.  The *Oakley* court concluded that "[b]ecause of such agency, and other significant roles played, acts initiated, and conduct undertaken by [the agent], he has subjected himself to the jurisdiction of [th]e Court …. [and] due to the admitted agency relationship … and express authority granted … by [the principal] to [the agent], the actions of [the agent] are attributable to and, in part, may properly be considered, action of [the petitioning creditor principal]."

Although the Defendants argue that state agency law should not be used to expand the scope of the persons who may be held liable under Section 303(i), the Court does not believe the

statute to be so limited in the first instance.  Liability is not only imposed on agents for bad faith conduct, but under agency principles, an agent may be held liable for tortious conduct, even committed in the course of actions taken on behalf of a disclosed principal.  *See Navid v. Uiterwyk Corp.*, 130 B.R. 594, 596 (M.D. Fla. 1991).

In *In re Southern California Sunbelt Developers, Inc.*, 608 F.3d 456 (9th Cir. 2010), thirteen petitioning creditors and their counsel were held ***jointly and severally*** liable for damages incurred by the alleged debtors. *Id*. There, the petitioning creditors filed involuntary bankruptcy petitions against the alleged debtors under Chapter 11 of the Bankruptcy Code. *Id*. The bankruptcy court, after an evidentiary hearing, dismissed the involuntary petition against both alleged debtors. *Id*.  In dismissing the case, the bankruptcy court found that the petitioners' claims were, among other things, the subject of a bona fide dispute. *Id*.  Subsequently, upon a motion to seek the recovery of attorneys' fees and costs and other damages, the bankruptcy court entered a judgment against <u>all</u> the petitioning creditors and their counsel holding them ***jointly and severally*** liable for damages incurred by the alleged debtors. *Id*.  On appeal, the Ninth Circuit upheld the bankruptcy court's decision of imposing joint and several liability on the petitioning creditors under Section 303(i)(1) and (2)(B) and their counsel under Rule 11 and the court's inherent powers. *Id*.  In affirming the bankruptcy court's decision, the Ninth Circuit found that it properly held the controlling individuals to be jointly and severally liable for the attorneys' fees and costs incurred by the alleged debtors to obtain the dismissal of the involuntary petitions, and upheld the judgments. *Id*.  This case illustrates the point that entities other than the petitioner can be held liable for Section 303(i) damages, including those who actually control the actions of the petitioners.

15

Other courts have routinely imposed joint and several liability under Section 303(i). *See*, *e.g.*, *Keiter v. Stracka*, 192 B.R. 150 (S.D. Tex. 1996) (upholding bankruptcy court's imposition of damages against the petitioning creditors, jointly and severally). *See also In re ELRS Loss Mitigation, LLC*, 325 B.R. 604 (Bankr. N.D. Okla. 2005) (imposing joint and several liability on all petitioning creditors for damages); *In re Mundo Custom Homes, Inc.*, 179 B.R. 566 (Bankr. N.D. Ill. 1995); *In re Promotion Dynamics, Inc.*, 1992 WL 391276 (Bankr. E.D. Pa. 1992); *In re Ross*, 135 B.R. 230, (Bankr. E.D. Pa. 1991); *In re Fox Island Square Partnership*, 106 B.R. 962, 19 (Bankr. N.D. Ill. 1989; *In re Laclede Cab Co.*, 76 B.R. 687 (Bankr. E.D. Mo. 1987); In re Advance Press & Litho, Inc., 46 B.R. 700 (Bankr. D. Colo. 1984).

In this case, it is clear that Fox, as employee of Lyon, executed the different versions of the involuntary petitions, and caused the filing of same.  Fox, on behalf of Lyon, exercised exclusive control over the Petitioning Creditors, acting within the scope of her employment as Director of Operations with Lyon, who acted on behalf of USB, as Trustee for the securitized transactions.   The inter-relationships of the parties are founded on principles of agency. Essentially, these parties are intertwined.  The Court therefore finds that Fox signed the petitions as an officer of Lyon which acted as the servicer and agent for the Petitioning Creditors.  Based on the foregoing analysis, the Court finds Lyon, as Fox's principal, to be liable for the fees and costs.  Thus, the Petitioning Creditors together with Lyon are jointly and severally responsible for Rosenberg's attorney' fees and costs pursuant to 11 U.S.C. § 303(i)(1).

## Reasonableness of Fees Sought

Section 303(i) provides that, after the dismissal of an involuntary bankruptcy case, the court may grant judgment against the petitioners and in favor of the alleged debtor for "a reasonable attorney's fee."  Under Section 303(i)(1), the requirement is only that the request for

fees be "reasonable."  Although a claim for fees under Section 303(i)(1) is not a fee application

by an estate professional, the standards for approving fee applications under 11 U.S.C. § 330

provide appropriate guidance.  *See In re Atlas Machine and Iron Works, Inc.*, 190 B.R. 796, 803

(Bankr. E.D. Va. 1995).  The Court will evaluate the fees requested under the factors set forth in

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974) and *In re First Colonial

Corporation of America*, 544 F.2d 1291 (5th Cir.), *cert. denied sub nom.*, *Baddock v. American

Benefit Life Ins. Co.*, 431 U.S. 904 (1977).  *See In re Overseas Holdings Ltd. Partnership*, 392

B.R. 889 (Bankr. M.D. Fla. 2008) (applying *Johnson* and *First Colonial* factors in determining

reasonableness of award of fees under Section 303(i)(1)).

The twelve factors set forth in *Johnson* are as follows:  (1) the time and labor required,

(2) the novelty and difficulty of the legal questions, (3) the skill required to perform the legal

services properly, (4) the preclusion of other employment by the attorney due to acceptance of

the case, (5) the customary fee for similar work in the community, (6) whether the fee is fixed or

contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount

involved and the results obtained, (9) the experience, reputation, and ability of the attorney, (10)

the undesirability of the case, (11) the nature and length of the professional relationship with the

client, and (12) awards in similar cases.  *Johnson*, 488 F.2d at 717-719.

Of these factors, the only factors relevant to the contentions made by Defendants are the

time and labor required and awards in similar cases.  Plaintiff seeks to recover the fees charged

by two law firms, Genovese, Joblove & Battista, P.A. ("GJ&B") and Weir & Partners, P.C.

("WP") for the work involved in obtaining the dismissal of the involuntary case.  The total

amount sought by Rosenberg is as follows: $1,054,295.45 in attorneys' fees and $39,019.37 in

costs for a total award of $1,093,314.82, which total amount is comprised of the fees and costs

incurred in providing professional services to Rosenberg (i) by WP in the amount of $124,702.00 in attorneys' fees and $5,221.65 in costs from November 11, 2008 to July 31, 2012, and (ii) by GJ&B in the amount of $929,593.45 in attorneys' fees and $33,797.72 in costs from January 1, 2009 through and including August 25, 2012.

The rates charged by the attorneys are not unreasonable for complex bankruptcy work, and the attorneys achieved a successful outcome for their client. Based on the Court's review of the docket, and the Court's familiarity with this case, the Court notes that the Original Petition was filed in the Bankruptcy Court for the Eastern District of Pennsylvania, where Rosenberg was represented by WP in that Court. The fees charged by WP are not excessive because of its extensive role in this case from inception to date. Ms. Verbonitz, of WP, has historically represented Rosenberg and she was familiar with the substantive Pennsylvania law underlying this case. While the case was pending in the Eastern District of Pennsylvania, a motion to dismiss was filed, together with supporting briefs, as well as a motion to transfer venue.

In January 2009, the proceeding was transferred to this Court, and discovery ensued. Ms. Verbonitz also assisted in discovery, obviating the need for other Pennsylvania counsel. Because of the continuing representation of Ms. Verbonitz, GJ&B did not have to glean historic information from a review of voluminous documentation when the case was transferred to this Court and thereafter. Many depositions were taken in preparation for the final hearing. Rosenberg took the depositions of Jane Fox, Robert Brier and Toby Robillard. The creditors took a deposition of the Alleged Debtor, Maury Rosenberg, and the parties exchanged a great deal of documents, which is evident from the exhibits submitted into evidence at trial.

Rosenberg's counsel filed numerous responsive and proactive motions with the Court and coordinated numerous interoffice attorney conferences. Exclusive of the Adversary Proceeding,

the Petitioning Creditors filed 13 substantive pleadings in the main bankruptcy case necessitating frequent discussions with the client regarding the relief sought and the appropriate response. Prior to dismissal, the Petitioning Creditors filed two involuntary petitions and a motion for leave to file a third. Many other pleadings, motions and responses were filed, increasing the total cost of litigation for all parties involved.

There were two preliminary hearings and the final hearing proceeded on April 20, 2009. At that final hearing, the Court focused on the eligibility of the Petitioning Creditors. The final hearing was evidentiary and the parties prepared accordingly; however, at trial, the parties stipulated that the Court could decide the matter based on the documentary evidence and transcripts, so the parties submitted deposition transcripts, witness statements and other documents in lieu of testimony at trial.

After the Court conducted the final hearing, each side submitted proposed orders containing findings of fact and conclusions of law. The Court eventually entered an order dismissing the case and thereafter the Petitioning Creditors filed a motion for reconsideration. The motion for reconsideration was fully briefed and the Court conducted a hearing thereon, following which the parties submitted proposed findings of fact and conclusions of law.

The Court finds all of the services performed with respect to the foregoing discovery, trial and associated briefing were necessary to achieve dismissal of the Involuntary Petition. Plaintiff is entitled to recover those fees as they were "reasonably necessary" to obtain a dismissal of the petition. *In re Merrifield Town Ctr. Ltd. P'ship*, 2010 WL 5015006 at *4 (Bankr. E.D. Va. 2010).

The Court disagrees with the Defendants' contentions that this matter could have been handled solely by GJB, an outstanding local firm that has significant bankruptcy expertise and a

large staff of experienced bankruptcy lawyers, and that there was no need for the continued involvement and participation of WP after the case was transferred. The Court believes it was appropriate and reasonable for WP to devote time to this matter not only during the transitional months following the transfer of the case, but throughout the entirety of the case.  WP, having worked with the Plaintiff over the years, had invaluable knowledge regarding the transactions which led up to the filing of the Involuntary Petition and such facts were necessary for discovery purposes as well as for the trial.  After the transfer, WP also continued to devote much time and attention to the client, personally, who found himself in a difficult and complex situation.  The Court finds it was reasonable for WP to provide Rosenberg with near daily, or even daily, reports on the status of this very serious filing.  Through no fault of Rosenberg's, he found himself in unfamiliar territory, facing procedures and an area of law (involuntary bankruptcy) with which he was unfamiliar.  The Court understands that Rosenberg wanted Ms. Verbonitz to stay involved, as a source of information and support and to confer on strategy issues, and believes it is appropriate to pass that cost on to Defendants, who wrongfully placed Rosenberg in that position.

The Defendants assert the Billing Records show excessive time was expended on attorney conference time and client conference time.  The Court disagrees.  Inter-office attorney conferences are a necessary part of the practice of law, especially when complex issues are involved and difficult strategy decisions must be made.  Of course, conference time with clients is equally as essential and expected.  Indeed, conference time appears throughout the Billing Records, but the Court does not find the conferences to be excessive under the circumstances of this case.  Rosenberg became extensively involved in the legal process and his own defense and

communicated with his attorneys in near daily phone conferences.  Client conferences are not precluded simply because one's lawyers are capable of filing the proper documents.

Based on all of the above factors, the Court concludes that the fees sought should be reduced by eliminating certain charges incurred for services in connection with the filing of the Complaint seeking fees against third parties, which claims were ultimately dismissed, as well as any costs associated with those claims.  The Court finds all other charges to have been reasonable and necessary, including all fees and costs incurred in this Adversary Proceeding to recover fees and costs under 11 U.S.C. §303(i).  It is

**ORDERED AND ADJUDGED** as follows:

1.      The Court awards to Plaintiff fees of $909,593.45 for the work performed by GJ&B, and fees of $124,702.00 for the work performed by WP.

2.      The Court awards to Plaintiff costs incurred by GJ&B on behalf of Plaintiff in the amount of $33,797.72 ***minus all costs for service of process upon the dismissed third party defendants in the Adversary Proceeding, as well as copying costs associated with serving the Complaint and other documents upon said parties***,[5] and $5,221.65 for the costs incurred by WP on behalf of Plaintiff.

3.      The Court determines that the Petitioning Creditors and Lyon are jointly and severally liable for the above sums.

5.      The Court reserves jurisdiction to determine whether additional fees and costs will be awarded for the completion of the Adversary Proceeding, through the jury trial, and for any other legal work that may be performed for Plaintiff in this matter hereafter.

###

---

[5] The Court does not have a Bill of Costs from which to ascertain this exact amount.

Copies via CM/ECF upon:

Peter H. Levitt, Esq.
Yale Galanter, Esq.
Carlos Sardi, Esq.

Attorney Carlos Sardi is directed to service a conformed copy of this Order upon all interested parties immediately upon receipt of same and shall file with the Court a certificate of service.